Kimberly Ann ZIZZA, Debtor.

Kimberly Ann Zizza, Appellant,

v.

Denise M. Pappalardo, Chapter
13 Trustee, Appellee.

BAP No. MW 13–008.
Bankruptcy No. 11–40840–HJB.

United States Bankruptcy Appellate Panel
for the First Circuit.

Oct. 18, 2013.

Anthony Rozzi, Esq., Salem, MA, on brief for Appellant.

Denise M. Pappalardo, Esq., and Joanne Zoto Psilos, Esq., on brief for Appellee.

Before LAMOUTTE, HAINES, and DEASY, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Kimberly Ann Zizza ("Zizza") appeals from a bankruptcy court order converting her chapter 13 case to chapter 7. For the reasons set forth below, we **AFFIRM** the order.

## BACKGROUND

Zizza is a licensed Massachusetts attorney. In November 2007 and February 2008, she sustained injuries in two different automobile accidents. Thereafter, she commenced state court civil actions to recover for her injuries. She filed the first, the Duffy lawsuit, in November 2010, and the second, the Sapienza lawsuit, in February 2011.

Zizza filed a voluntary petition for chapter 13 relief on March 6, 2011. She failed to list the Duffy and Sapienza lawsuits on her Schedule B–Personal Property and on her Statement of Financial Affairs. Shortly after the petition date, Zizza dismissed her personal injury attorney in the state court lawsuits.

In early April 2011 Denise Pappalardo, the chapter 13 trustee, conducted a § 341 [1] meeting of creditors, at which Zizza appeared, represented by bankruptcy counsel. Zizza did not disclose the pending lawsuits during the course of the creditors' meeting. Yet, only four days later, she appeared before the state court to argue a motion to vacate a previously issued order in the Duffy lawsuit. Zizza then retained a second personal injury attorney, Nicholas Guerrera, to represent her in the Duffy lawsuit. She did not seek bankruptcy court approval of his employment, as required by the Code. *See* 11 U.S.C. § 327.

On September 23, 2011, Zizza filed an amended Schedule B, adding as assets several accounts receivable and money judgments. Once again, she made no mention of the Sapienza and Duffy lawsuits. Three days later, having previously rejected a settlement offer in the Duffy matter, she settled the Sapienza lawsuit for $20,000.00.[2]

On October 5, 2012, the trustee filed a motion to dismiss Zizza's chapter 13 case for, inter alia, failure to make plan payments. The trustee withdrew the motion when Zizza caught up with her plan payment obligations. Only then (more than a year and a half after filing) did Zizza inform her bankruptcy counsel of the pend-

1. Unless otherwise stated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended (the "Code" or "Bankruptcy Code"), 11 U.S.C. §§ 101, *et seq.*, as amended.

2. Zizza did not file a motion to approve the settlement until December 12, 2012.

ing lawsuits. Bankruptcy counsel, in turn, advised the trustee. *See* 11 U.S.C. § 327.

On October 30, 2012, Zizza again amended her Schedule B. This time she listed the two lawsuits as assets. At the same time, she amended Schedule C, claiming the lawsuits as exempt property. In response, the trustee moved to convert Zizza's case to chapter 7, arguing that Zizza's failure to timely disclose the lawsuits and her failure to obtain authorization to employ personal injury counsel demonstrated she was not proceeding in good faith, as required by § 1325(a)(3).

Zizza denied acting in bad faith or with fraudulent intent. She represented that: (1) she had not disclosed the suits because she believed her claims were not viable; (2) she had disclosed her bankruptcy to her personal injury attorney, and believed he would do all that was required; (3) she could point to voluntary polygraph test results proving that she had timely disclosed the bankruptcy case to her personal injury lawyer; and (4) she did not file a motion to employ her personal injury lawyer because she was unhappy with his services. She also filed an unnotarized affidavit, in which she reiterated the foregoing assertions.

On January 22, 2013, the bankruptcy court heard the motion to convert. In an effort to justify her omissions, Zizza explained that she was struggling with difficult family issues in addition to her bankruptcy, including two seriously ill children. She added that she would drop her claim to an exemption in the lawsuits.

Unpersuaded by Zizza's explanations, the bankruptcy court granted the motion to convert, ruling from the bench as follows:

> Ms. Zizza, an attorney, filed a bankruptcy case in which she was required . . . to file schedules and statements, and a Statement of Affairs under the pains

and penalties of perjury. The schedules asked if she had any claims against others, contingent or noncontingent. The Statement of Affairs asked if she was the party to any, if she had been the party to any lawsuits within the prior 12 months. In Schedule B, Ms. Zizza failed to list any of the accounts receivable or contingencies that might lead to revenues arising from her law practice and she failed to list a contingent claim that she had against two defendants in two different automobile accident suits that either were then pending or had been pending within the prior year. Similarly, in the Statement of Affairs she failed to list those suits.

> Very shortly, after filing the bankruptcy case, she retained Attorney Guerrera to pursue those same suits, which she failed to list in her schedules and Statement of Affairs, and made no effort whatsoever to amend the schedules or alert anyone until the Chapter 13 Trustee complained that her plan wasn't feasible because there didn't seem to be sufficient funds to render any plan feasible.

> Then there is suddenly a flurry of activity amending the schedules and an argument presents itself between Ms. Zizza and Mr. Guerrera where they're pointing fingers at one another about who knew what and when, who said what and when.

> The Chapter 13 case is not feasible because I cannot find that Ms. Zizza either filed the case in good faith or could propose a plan now in good faith. The case needs to be converted to Chapter 7. The result may be draconian, but that doesn't make it unjust.

> . . .

> The motion to convert the case to Chapter 7 is granted.

Thereafter, Zizza filed a motion for reconsideration, which the court denied. This appeal ensued.

## JURISDICTION

We are "duty-bound" to determine our jurisdiction before proceeding to the merits even if not challenged by the parties. *See Boylan v. George E. Bumpus, Jr. Constr. Co., (In re George E. Bumpus, Jr. Constr. Co.,),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998). We are empowered to hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "An order converting a chapter 13 case to one under chapter 7 is a final order." *Hayes v. Mass. Dep't of Revenue (In re Hayes),* No. BAP MB 09–001, 2009 WL 8466788, at *3 (1st Cir. BAP Aug. 3, 2009) (citation omitted). Accordingly, this matter is properly before us.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.,* 592 F.3d 267, 269 (1st Cir.2010). "A bankruptcy court's decision to dismiss or convert a case under § 1307(c) is reviewed for an abuse of discretion." *Sullivan v. Solimini (In re Sullivan),* 326 B.R. 204, 210 (1st Cir. BAP 2005) (citing *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1222–23 (9th Cir.1999); *Ho v. Dowell (In re Ho),* 274 B.R. 867, 870–71 (9th Cir. BAP 2002)). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* (citation omitted).

"A finding of bad faith, as a basis for granting a motion to convert or dismiss under § 1307(c), is reviewed for clear error." *Id.* (citation omitted). "The clearly erroneous standard requires this Panel to give great deference to the bankruptcy court as the trier of fact." *Id.* "Under this standard, a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

## DISCUSSION

■ Zizza asserts that the court erred in finding that she acted in bad faith and in converting her case without an evidentiary hearing. Although she also identified denial of reconsideration as one of the issues on appeal, she ignored the reconsideration issue in her brief. We, therefore, deem the argument waived. *Furness v. Wright Med. Tech., Inc. (In re Mercurio),* 402 F.3d 62, 64 n. 1 (1st Cir.2005) (holding that failure to brief an argument constitutes waiver).

### I. The Standard: Dismissal or Conversion Under § 1307(c)

■ Section 1307(c) provides that, "on request of a party in interest or the United States trustee and after notice and a hearing," the court, for cause, may dismiss a case under chapter 13 or convert the case to chapter 7, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c). "The moving party under [ ] § 1307(c) bears the burden of proof." *In re O'Neal,* No. 10–22931, 2011 WL 2117017, at *6 (Bankr.D.Mass. May 23, 2011) (citation omitted).

■ Although cause is not defined, § 1307(c) enumerates eleven separate circumstances that can constitute cause. *See* 11 U.S.C. § 1307(c). The list is not exclu-

sive. *Torres Martinez v. Arce (In re Torres Martinez),* 397 B.R. 158, 166 (1st Cir. BAP 2008). "Although lack of good faith is not specifically enumerated as 'cause,' it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." *Cabral v. Shamban (In re Cabral),* 285 B.R. 563, 572 (1st Cir. BAP 2002) (citations omitted); *see also Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 379, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).

■ "There are two separate and distinct tranches of good faith in Chapter 13 cases. The debtor must *both* have filed the Chapter 13 case in good faith and [have] proposed the Chapter 13 plan in good faith." *In re Torres Martinez,* 397 B.R. at 165; *see also* 11 U.S.C. § 1325(a)(7) (for good faith requirement in filing the petition); 11 U.S.C. § 1325(a)(3) (for good faith requirement in proposing the plan). Here, the first tranche is determinative.

■ We employ a "totality of the circumstances test" to determine whether a debtor filed a bankruptcy petition in good faith. *In re Sullivan,* 326 B.R. at 211 (citations omitted). The debtor's pre-petition and post-petition conduct is relevant in making the determination. *Id.* (citations omitted). To determine whether a chapter 13 debtor filed a petition in bad faith, bankruptcy courts properly consider:

(1) debtor's accuracy in stating her debts and expenses[;] (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations[;] (3) whether the Bankruptcy Code is being unfairly manipulated[;] (4) the type of debt sought to be discharged[;] (5) whether the debt would be dischargeable in a Chapter 7[;]

and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

*Id.* at 212 (citing *In re Cabral,* 285 B.R. at 573; *In re Dicey,* 312 B.R. 456, 459 (Bankr.D.N.H.2004); *In re Virden,* 279 B.R. 401, 408 (Bankr.D.Mass.2002)). Fraudulent intent is not essential. *Id.* (citation omitted).

■ The inquiry is a fact intensive determination, and the factors considered vary case to case. *Id.* (citation omitted). "Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith." *In re Dicey,* 312 B.R. at 459.

## II. Zizza's Conduct

■ Zizza failed to disclose two assets, the two lawsuits, on her original and first amended Schedule B, in her Statement of Financial Affairs, and at her § 341 meeting of creditors. Her rationalization that she did not promptly disclose these assets because she believed the claims were "not viable" is belied by her sophistication in legal matters as a licensed, practicing attorney and by her active participation in the suits during her bankruptcy case. Prior to her belated disclosures in October 2012, Zizza filed and argued a motion in state court, accepted a settlement offer in one suit, rejected an offer in the other, fired her first personal injury attorney, and hired and fired her second.

■ Even if Zizza harbored an honest, but mistaken, belief that her personal injury claims were not viable, she nonetheless had a duty to disclose them. That duty endured throughout her bankruptcy case. *See Vasiliades v. Dwyer,* No. Civ.A. 05–10479–FDS, 2006 WL 1494081, at *5 (D.Mass. May 23, 2006); *Wood v. Premier Capital, Inc. (In re Wood),* 291 B.R. 219, 226 (1st Cir. BAP 2003) ("Debtors have an absolute duty to report whatever interests

they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate.") (citation omitted).

The record firmly establishes sufficient indicia of bad faith to warrant conversion. *See Sullivan*, 326 B.R. at 211–12. Zizza's argument that she relied on advice of counsel and trusted that he would do all that was required does not alter our conclusion.

> [I]t is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules.... A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir.1987).

Equally unavailing is Zizza's assertion that she ultimately amended her schedule a second time, disclosing the lawsuits. "Several decisions have noted that amendments 'cannot expunge the falsity of an oath.'" *Satriale v. Mumin (In re Mumin)*, No. 97–0993DAS, 1998 WL 160992, at *2 (Bankr.E.D.Pa. April 1, 1998) (citations omitted) (denying debtor's discharge pursuant to § 727(a)(4)(A), notwithstanding his belated amendments to his schedules and Statement of Financial Affairs). Moreover, the timing of her disclosure, on the heels of the motion to dismiss, suggests Zizza amended her schedule only because "the cat was out of the bag." *Wieland v. Miller (In re Miller)*, 448 B.R. 551, 569 (Bankr.N.D.Okla.2011) (citations omitted) (internal quotation marks omitted).

We need not tarry on Zizza's protest that the bankruptcy court wrongfully deprived her of an evidentiary hearing. Granted, § 1307(c) provides that the court may dismiss or convert "after notice and a hearing." This phrase "is a defined term, which means after such notice and opportunity for a hearing as is appropriate in the particular circumstances." *In re Abijoe Realty Corp.*, 943 F.2d 121, 124 n. 4 (1st Cir.1991) (citing 11 U.S.C. § 102(1)(A)). "[E]videntiary hearings are not always required when a bankruptcy court dismisses or converts a bankruptcy case." *In re Cabral*, 285 B.R. at 576 (citations omitted). Zizza had an opportunity to contest the motion to convert and to present her affidavit at the January 22, 2013 hearing, but did not request the chance to present testimony prior to the scheduled hearing date. An evidentiary hearing was not required. *See Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949 (2d Cir. BAP 1998). We emphasize that the question is not whether we would opt to convene a testimonial hearing in the circumstances, but whether the trial court abused its discretion in not doing so. *See United States v. Grant*, 114 F.3d 323, 326 (1st Cir.1997) (citation omitted).

The bankruptcy court's finding that Zizza lacked good faith in filing is supported by the record. The bankruptcy court did not abuse its discretion in converting her case to chapter 7.[3]

## CONCLUSION

The order converting Zizza's chapter 13 case to chapter 7 is hereby **AFFIRMED**.

---

**3.** Because Zizza has not challenged the bankruptcy court's decision to convert, rather than dismiss, her chapter 13 case, that issue is waived. *See In re Mercurio*, 402 F.3d at 64 n. 1.